# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

LUCILA BERNAL, ) Case No. CV 10-4059 JCG
)
    Plaintiff, )
)
    v. ) **MEMORANDUM OPINION AND ORDER**
)
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL )
SECURITY ADMINISTRATION, )
)
    Defendant. )
)

## I.
## INTRODUCTION AND SUMMARY

On June 3, 2010, plaintiff Lucila Bernal ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of disability insurance benefits ("DIB") and supplemental security income ("SSI"). [Docket No. 3.]

On December 30, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 13, 14.]

On April 12, 2011, the parities submitted a detailed, 40-page joint stipulation ("Joint Stip."). [Docket No. 18.]

In sum, having carefully studied, *inter alia*, the parties' joint stipulation and the administrative record ("AR"), the Court concludes that, as detailed herein, the Administrate Law Judge ("ALJ") inappropriately discounted Plaintiff's subjective complaints about the severity of pain and her limitations. The Court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 47 years old on the date of her administrative hearing, does not speak or write English, completed third grade as her highest level of education, and has no special job training. (*See* AR at 35, 38, 94, 100.)

On September 11, 2006, Plaintiff filed for DIB and SSI, alleging that she has been disabled since August 1, 2005 due to diabetes, arthritis, weakness in her shoulder, severe dysfunction of right dominant upper extremity, inability to stay on her feet, and difficulty in sustaining and changing postural positions. (*See* AR at 95, 130.)

On March 4, 2008, Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ. (*See* AR at 37-44.) The ALJ also heard testimony from Steven Berry, a vocational expert ("VE"). (*Id.* at 44-45.)

On March 26, 2008, the ALJ denied Plaintiff's request for benefits. (AR at 13-18.) Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (*Id.* at 15.)

At step two, the ALJ found that Plaintiff suffers from severe impairments consisting of "status post right shoulder subacromial decompression, degenerative cervical and lumbar disc disease, carpal tunnel syndrome, diabetes mellitus, a history of cardiac catheterization, and morbid obesity." (AR at 15.)

At step three, the ALJ determined that the evidence did not demonstrate that

Plaintiff's impairments, either individually or in combination, meet or medically equaled the severity of any listing set forth in the Social Security regulations.[1/] (AR at 15.)

The ALJ then assessed Plaintiff's residual functional capacity[2/] ("RFC") and determined that she can perform light work with limitations. (AR at 16.) Specifically, the ALJ found Plaintiff cannot do more than occasional overhead reaching with "her bilateral upper extremities." (*Id.*)

The ALJ found, at step four, that Plaintiff has the ability to perform her past relevant work as a machine operator and a machine operator/inspector. (AR at 18.) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 13, 18.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 1-3, 68.) The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings

---

[1/] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[2/] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## ISSUES PRESENTED

Two issues are presented here:

1. whether the ALJ properly evaluated the medical evidence, (*see* Joint Stip. at 3-29); and

2. whether the ALJ properly assessed Plaintiff's credibility. (Joint Stip. at 30-40.)

Under the circumstances here, the Court finds the issue of Plaintiff's credibility to be dispositive of this matter, and does not reach the remaining issue.

# V.

# **DISCUSSION AND ANALYSIS**

Plaintiff argues that the ALJ's decision discounting Plaintiff's complaints "lacks the requisite support of substantial evidence and is [the] result of legal error." (Joint Stip. at 31, 32.) Plaintiff also contends that "[t]here is objective evidence of impairment and several physicians have opined greater limitations than found by the ALJ[.]" (*Id.* at 32.)

Defendant counters that substantial evidence does, in fact, exist to support the ALJ's decision. (Joint Stip. at 37.) Defendant also contends that Plaintiff's condition could be controlled by medication. (*Id.* at 36.) Finally, Defendant argues that Plaintiff exaggerated her symptoms. (*Id.*)

A. <u>The ALJ Must Provide Clear and Convincing Reasons for Discounting Plaintiff's Subjective Complaints</u>

Plaintiff, of course, carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). But once a plaintiff meets that burden, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997, *as amended* Sept. 17, 1997) ("[A] claimant need not present clinical or diagnostic evidence to support the severity of his pain.") (internal citation omitted).

Under these circumstances, an ALJ can then reject a plaintiff's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton*, 331 F.3d at 1040. The ALJ may consider the following factors in weighing a plaintiff's credibility:

(1) his or her reputation for truthfulness;

(2) inconsistencies either in the plaintiff's testimony or between the plaintiff's

5

testimony and his or her conduct;

    (3) his or her daily activities;

    (4) his or her work record; and

    (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering. (*See generally* AR at 13-18.) Thus, the ALJ's reasons for rejecting Plaintiff's credibility must rest on clear and convincing reasons. *See Benton*, 331 F.3d at 1040. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995, *as amended* April 9, 1996); *Reddick*, 157 F.3d at 722.

    B.    Plaintiff's Subjective Complaints

At the March 4, 2008 hearing, Plaintiff testified that she has "a lot of pain in [her] hands." (AR at 39.) She also stated that "[t]here's a lot of numbness" in her hands. (*Id.*) Plaintiff said that she has worn braces on both hands for about a year because when she was not wearing them "[her hands] hurt more or there's tingleness." (*Id.* at 40.) Plaintiff said that she had not had surgery on her hands because her doctor told her that while he could operate he could not guarantee that she would come out in "good shape." (*Id.*) Plaintiff reported that "[w]hen [she] wake[s] up in the morning [she] feel[s] [her] arms and hands, they're like very tired like if [she] had done strenuous work." (*Id.* at 41.)

Plaintiff also said that she suffered from diabetes which caused kidney infections. (AR at 40.) Plaintiff continued by saying that "[her] feet are numb quite often and they hurt a lot." (*Id.*)

Plaintiff talked about having surgery on her right shoulder. (AR at 39, 40.) Plaintiff said that the surgery "helped a little, but [her shoulder] still hurts a lot." (*Id.* at 40.) Plaintiff stated that she was still limited in her movements after the surgery

because "[t]he doctor said I could [reach overhead] - - if I do that it has to be very light because the tendons could snap off or break." (*Id.*)

Plaintiff testified that she had problems sitting and standing. (AR at 41.) Plaintiff extrapolated by saying that after twenty minutes of sitting her hips hurt and when she stands immediately afterwards her feet hurt. (*Id.*) Plaintiff explained that it takes her about five to ten minutes before she starts to feel better. (*Id.*) Plaintiff also testified that she can only tolerate standing for "about half an hour." (*Id.*) Plaintiff added that she cannot "be in one position. [She has] to be switching from one to the other[.]" (*Id.* at 42.)

The ALJ asked Plaintiff if she was able to move around at work, to sit and stand as needed, would she then be able to work. (AR at 42.) Plaintiff replied "[i]f I didn't have to lift anything with my hands or use my hands." (*Id.*) Plaintiff expounded by saying that, at most, she was capable of lifting a gallon of milk, although it was difficult for her to do so. (*Id.*) Plaintiff said that she has difficulty opening bottles or jars. (*Id.* at 43.)

Plaintiff testified that she is able to perform light chores around the house. (AR at 42.) Plaintiff said that while her daughters-in-law do most of the chores, she sometimes helps "with washing the dishes or maybe cutting something for cooking." (*Id.*)

With respect to her daily activities, Plaintiff stated, "I go outside and I walk a little, I go outside and I throw the trash out, come back in and maybe wash some dishes, I'll fold some clothes." (AR at 42.)

C.  <u>ALJ's Purported Reason(s) for Discounting Plaintiff's Credibility</u>

In rejecting Plaintiff's credibility, the ALJ summarized Plaintiff's testimony and found that Plaintiff's "medically determinable impairments could reasonably be expected to produces some symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR at 17.)

The ALJ also concluded that "the objective medical evidence does not document medical findings consistent with the extreme limitations alleged by [Plaintiff]." (AR at 17.)

The ALJ said that "[t]here are no reports of persistent abnormalities of gait and station, or other physical abnormalities consistent with complaints of back pain." (AR at 17.)

The ALJ found that two factors weighed against Plaintiff's alleged difficulty with basic living. (AR at 17.) First, the ALJ said that Plaintiff's "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." (*Id.*) Second, the ALJ said that even if Plaintiff's limitations were true, "it is difficult to attribute that degree of limitation to [Plaintiff's] medical condition, as opposed to other reasons[.]" (*Id.*)

Finally, the ALJ said that the evidence failed to show Plaintiff required on-going treatment since May 2007. (AR at 17.) The ALJ reasoned that "if [Plaintiff] suffered from disability pain, she would have been receiving on-going medical care." (*Id.*)

### D. ALJ Improperly Discounted Plaintiff's Credibility

After a careful review of the medical record and the parties' papers, the Court has considered the ALJ's reasons for finding Plaintiff not credible, and concludes that the ALJ's reasons are not clear and convincing and/or supported by substantial evidence. Four reasons guide this Court's determination.

First, the ALJ erred to the extent he rejected Plaintiff's credibility based on a lack of objective medical evidence. (*See* AR at 17.) Plaintiff provided sufficient medical evidence of underlying impairments that were reasonably likely to cause the symptoms she described. For instance:

1. An evaluation, dated September 11, 2006, reported Plaintiff had "a right shoulder subacromial decompression with poly somatic complaints non related to her surgery." (AR at 180.)

2.      An evaluation, dated October 6, 2006, reported that Plaintiff has "diabetes mellitus or oral hypoglycani [sic]" for six years and that Plaintiff had visited the doctor every one to two months.  (AR at 195.)

3.      A treatment note, dated September 5, 2006, reported that Plaintiff had a "rotator cuff tear [right] shoulder." (AR at 199-200.)  The same note reported that Plaintiff was "unable to push/pull/lift any object/weights [with] the [right] hand/arm heavier than 1-2 [pounds].  Unable to do repetitive bending, prolonged sitting or standing longer than 30-60 mins." (*Id.* at 200.)  It also indicated that Plaintiff could only sit, stand, or walk for less than one hour in a work day.  (*Id.*)

4.      An evaluation note, dated August 8, 2006, diagnosed Plaintiff with "[m]ultilevel spondylosis involving the upper lumbar spine with facet hypertrophy involving the lower lumbar spine." (AR at 205.)

5.      A treatment note, dated August 7, 2006, indicated Plaintiff complained about lower back pain for at least four days after falling in the shower.  (AR at 206.)

6.      An MRI report, dated April 28, 2006, showed that Plaintiff had a "partial tear formation of the supraspinatus tendon distally. . . [n]oticeable hypertrophic DJD of the AC joint . . . some intrasubstance degeneration of the labra." (AR at 222.)

7.      A treatment note, dated April 19, 2006, noted that Plaintiff was complaining of neck and head pain.  (AR at 229.)

8.      A cervical spine examination note, dated December 28, 2005, showed that Plaintiff had "straightening of the cervical lordiosis." (AR at 243.)

9.      A treatment note, dated December 27, 2005, reported that Plaintiff was complaining of pain in her right leg that had lasted multiple days.  (AR at 244.)

10.     A treatment note, dated September 16, 2005, stated that Plaintiff had pain in her neck, right shoulder and hand.  (AR at 251.)

11.     A treatment note, dated July 19, 2005, indicated that Plaintiff had pain in her legs and numbness on the left side of her face for about a week.  (AR at 254.)

1          12.     An internal medicine evaluation, dated November 22, 2006, showed that Plaintiff had "tenderness in the area of the left sciatic notch" and the straight leg raise test was "positive on the left side and some reflex discrepancy and sensory impairment was noted." (AR at 289.)

           13.     An examination report, dated May 16, 2007, concluded that Plaintiff has "severe back pain and suffers from radiculopathy from the hip and down with cramping and pain in her legs and calves[.]" (AR at 292.) The report also said that Plaintiff had lumbar disc disease and intense pain in her hands and wrists. (*Id.*)

           14.     An examination report, dated May 16, 2007, diagnosed Plaintiff with "a combination of severe tunnel pain and numbness and cramping of her hand . . . the carpal tunnel syndrom is quite severe on the right [hand], but borderline on the left." (AR at 293.)

           The ALJ rejected Plaintiff's testimony regarding her subjective complaints because the "medical evidence does not document . . . findings consistent with the extreme limitations alleged by [Plaintiff]." (AR at 17.) Because Plaintiff produced sufficient medical evidence of underlying impairments that are likely to cause difficulty standing and sitting, difficulty using her hands, and back pain, Plaintiff met her burden and medical findings are not required to support the alleged *severity* of her complaints. *See Bunnell*, 947 F.2d at 345; Social Security Ruling ("SSR") 96-7P,[3/] 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his

---

[3/] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

10

or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").

Second, the ALJ rejected Plaintiff's credibility because her "limited daily activities cannot be objectively verified." (AR at 17.) Such a standard imposes "an extremely heavy, and unwarranted, burden on the Plaintiff." *Haller v. Astrue*, 2008 WL 4291448, at *5 (E.D. Cal. Sept. 18, 2008). Social Security regulations state that a claimant's statements about daily activities will be evaluated in relation to the objective medical record. *See* 20 C.F.R. § 404.1529(c)(4) (amended in other sections); *see also Haller*, 2008 WL 4291448, at *5 (explaining that ALJ must cite authority in order to prove that Plaintiff is "required to offer objective verification, to a reasonable degree of certainty, regarding his activities of daily living"); *see also Lester*, 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

Third, the ALJ was not convinced that Plaintiff's limitations stemmed from her medical condition "as opposed to other reasons." (AR at 17.) This reason is not "specific, clear and convincing." *Berkelhammer v. Astrue*, 2009 WL 416037, at *3 (C.D. Cal. Feb. 19, 2009) (an ALJ's rejection of claimant's credibility because a claimant's limits may come from unspecified other reasons is not a clear and convincing reason to reject claimant's testimony). The ALJ did not specify what other reasons could be responsible for Plaintiff's limitations. *See* SSR 96-7p, 1996 WL 374186, at *4 (stating that "it is not sufficient to make a conclusory statement" and that an ALJ "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight"); *see also McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989) (explaining that an ALJ's conclusions cannot be too broadly stated to be acceptable).

Finally, the ALJ rejected Plaintiff's testimony because "the documentary

evidence fails to show that the claimant has required on-going treatment since May 2007." (AR at 17.) Plaintiff's last medical record is from Salvatore A. Danna, M.D. ("Dr. Danna") on May 16, 2007. (*Id.* at 292.) In that report, Dr. Danna reported "[f]ollowup will be in two months." (*Id.*) Although the further treatment of Plaintiff is unknown, it does suggest the ALJ's going-forward assumption could be inaccurate. *See Berkelhammer*, 2009 WL 416037, at *4 (holding that records showing a claimant was scheduled to have surgery was sufficient to disprove ALJ's assumption that claimant had not sought additional treatment). However, the hearing was held in March 2008, well after Plaintiff should have had her follow-up appointment with Dr. Danna. (AR at 37-44, 292.) Plaintiff argued that the lack of treatment records after 2007 was "a clerical rather than a substantive issue." (Joint Stip. at 34.) Defendant did not address this argument. (*See id.* at 35-38.) The ALJ shall obtain additional information and clarification regarding Plaintiff's medical treatment received after May 2007.

## VI.
## **REMAND IS APPROPRIATE**

This Court retains discretion to remand or reverse and award benefits. *McAllister*, 888 F.2d at 603. Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000), *cert. denied*, 531 U.S. 1038 (2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, there are outstanding issues which must be resolved before a final determination can be made. On remand, the ALJ shall reconsider Plaintiff's

subjective complaints and the resulting functional limitations, and either credit Plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them. In addition, if necessary, the ALJ shall obtain additional information and clarification regarding Plaintiff's functional limitations. The ALJ shall reassess the medical opinions in the record and provide sufficient reasons under the applicable legal standard for rejecting any portion of the medical opinions. The ALJ shall then proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.[4/]

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** the matter for further administrative action consistent with this decision.

Dated: May 9, 2011

                                                                                                           Hon. Jay C. Gandhi
                                                                                                           United States Magistrate Judge

---

[4/] In light of the Court's remand instructions, it is unnecessary for the Court to address Plaintiff's remaining contentions. (*See* Joint Stip. at 3-29.)